IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD A. WASHINGTON, | : | |
|     Petitioner, | : | Civil Action Nos. |
| | : | |
| v. | : | 02-CV-7474 |
| | : | & |
| RAYMOND J. SOBINA, et al., | : | 06-CV-1437 |
|     Respondents. | : | |

### ORDER AND MEMORANDUM

Pro se petitioner has filed two habeas petitions in this court (Civ. Action Nos. 02-7474 & 06-1437) and moves for my recusal from both cases under 28 U.S.C. § 455. In the body of his motion for recusal, petitioner also requests that – before recusing myself – I first vacate his May 9, 2006 guilty plea in state court, or in the alternative reduce his sentence under the terms of that plea agreement.[1] (Pet'r's Mot. at 17, 20.) For the following reasons, I will deny both the motion to recuse and the request to alter petitioner's guilty plea or sentence.

I.  *Background*

In his initial habeas filing, Civil Action No. 02-7474, petitioner asserted two claims: 1) violation of the speedy trial requirement of the Sixth Amendment, and 2) violation of the speedy appeal requirement of due process.[2] I appointed counsel for petitioner twice (Doc. #5, #45), and

---

[1] Without going into detail about the contradictory nature of these two requests, I will address petitioner's requests to alter his plea agreement because he contends that my involvement in plea negotiations before this court – a proposed agreement that petitioner ultimately rejected – violated Federal Rule of Criminal Procedure Rule 11.

[2] For details about these claims and the history of petitioner's state court trials, see Washington v. Sobina, 387 F.Supp.2d 460 (E.D.Pa. 2005).

twice petitioner moved to dismiss his counsel and proceed pro se (Doc. #37, #92), which I granted (Doc. #38, #94). I attempted to facilitate a settlement plea agreement, and the government proposed five to ten years imprisonment in exchange for petitioner's guilty plea to third-degree murder and kidnaping, the only remaining charges against him. Although petitioner had already served over five years in prison, he rejected the offer.[3] On September 12, 2005, I denied the speedy trial claim, which petitioner appealed (C.A. 05-4599), and conditionally granted the speedy appeal claim, which the government appealed (C.A. 05-4522).[4]

Subsequently, in this court, petitioner moved 1) to proceed pro se, 2) to reconsider and/or vacate the September 12 judgment, and 3) for Release on Recognizance ("ROR") bail pending his direct appeal in state court. On February 23, 2006, I denied the motions to reconsider/vacate and for ROR bail, which petitioner also appealed (C.A. 06-2047).[5]

Finally, both sides filed motions to stay. The government moved to stay my September 12, 2005 conditional grant of habeas relief pending the outcome of the two appeals from this order. I granted this motion on March 3, 2006. Petitioner moved for an order to stay his fourth trial in state court pending the outcome of his habeas petition and/or direct appeal in state court. I denied this motion on May 3, 2006.

---

[3] Petitioner declined this offer during an evidentiary hearing on January 18, 2005. (Tr. 1/18/05 at 5-6). On May 9, 2006, petitioner plead guilty to these charges in return for the District Attorney's Office's offer of 7 ½ to 21 years. Petitioner recognizes to be "a much harsher sentence" than what was previously offered to him in this court. (Pet'r's Mot. at 14.)

[4] These appeals – and the issues of whether the Commonwealth violated petitioner's rights to a speedy trial and/or speedy appeal – are still pending before the Third Circuit.

[5] This appeal was construed by the Third Circuit as an application for certificate of appealability and denied as untimely.

In his subsequent habeas filing, Civil Action No. 06-1437, petitioner raises nine different claims, including: collateral estoppel, double jeopardy, failure to suppress evidence, wrongly disallowing impeachment of a witness, ineffective assistance of counsel, and illegal incarceration because ROR bail was never revoked. On August 22, 2006, I adopted the magistrate judge's report and recommendation that the petition be denied as a "second or successive" petition. Washington then applied for leave to file a second petition with the Third Circuit (C.A. No. 06-4137), which denied the application as "unnecessary."[6]

II.   *Recusal*

Petitioner claims that I should recuse from both habeas corpus actions because I am biased against him and have retaliated against him. This alleged bias stems from my resentment against him for rejecting the proposed plea bargain agreement that I tried to facilitate and was presented to petitioner in Civil Action No 02-7474. (Pet'r's Mot. at 4.) Petitioner presents evidence of such bias, as will be discussed below, and claims to fear that I will retaliate against him in future proceedings. (Pet'r's Mot. at 16.)

   A.   *28 U.S.C. § 455*

Petitioner moves for recusal under 28 U.S.C. § 455.[7] This statute lists numerous bases

---

[6] Petitioner's Motion to Re-open is now pending before me, but I will not address that motion here.

[7] In his motion, petitioner does not mention 28 U.S.C.A. § 144, which states:
Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

for which a judge may be disqualified, of which only § 455(a) and § 455(b)(1) are arguably relevant here.[8]  28 U.S.C.A. § 455 (a) states  "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C.A. § 455 (b) adds, "He shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party...."

Analysis of recusal under § 455(a) and § 455(b)(1) must account for the "extrajudicial source" doctrine or factor. Liteky v. U.S., 510 U.S. 540, 552-3 (1994).  According to this doctrine, neither judicial rulings nor opinions formed by the judge on the basis of facts introduced or events occurring during current or prior proceedings are grounds for recusal, unless they evidence some "deep-seated favoritism or antagonism."  Id. at 555; Johnson v. Carroll, 369 F.3d 253, 260 (3d Cir. 2004).   Recusal is often justified when bias stems from influences outside the ongoing judicial process.  See, e.g., Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) (holding that judge should have recused when he was trustee of a university that had a financial interest in the case) ; Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155 (3d Cir. 2004) (judge, who was publicly criticized by lawyer in newspaper, should have recused from

---

Petitioner also did not file an affidavit with his motion.  But even if petitioner had moved for recusal under 28 U.S.C.A. § 144, and had filed an affidavit using the same arguments and logic, if would not have been "sufficient" because of the extrajudicial source factor.  See infra; United States v. Enigwe, 155 F.Supp.2d 365, 370-372 (E.D.Pa. 2001) (finding a habeas petitioner's motion for recusal based on 28 U.S.C. § 144 to be insufficient because no statements in the affidavit supported disqualification of the judge based on personal or extrajudicial bias).

[8] The other bases for disqualification are not relevant to the alleged bias perceived by petitioner.  They include participating in the proceeding in some capacity other than as judge, having a financial interest in the controversy, and having a third degree relationship with any parties to the proceeding, among others.  28 U.S.C. § 455(b)(2)-(5).

all cases involving that lawyer).  When the alleged bias "stem[s] from facts gleaned during judicial proceedings themselves," recusal is not warranted unless the judge's actions "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky at 555. See also In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 343 (3d Cir. 1998) (noting that the bias "must be particularly strong in order to merit recusal").

In the absence of actual bias, recusal may also be justified by the appearance of impartiality.  See Lewis v. Curtis, 671 F.2d 779, 789 (3d Cir.1982) (holding that "the polestar [of recusal] is '[i]mpartiality and *the appearance of impartiality.*'" (emphasis in original)), overturned on other grounds, 11 F.3d 1197 (3rd Cir. 1993).  Under the broader, catch-all § 455(a) provision, the inquiry is "whether a reasonable person knowing all the circumstances would harbor doubts concerning the judge's impartiality." Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n 107 F.3d 1026, 1042 (3d Cir. 1997); Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990) (quoted in In re Kensington Intern. Ltd., 353 F.3d 211, 220 (3d Cir. 2003)).  The ultimate issue is whether the public can have confidence in the integrity of the court's judgments. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860.  To this end, the proponent of recusal must identify facts that "might reasonably cause an objective observer to question [the Judge's] impartiality."  Id. at 865.

B.      *Discussion*

Washington does not allege any extrajudicial influences.  Instead, he points to rulings and actions taken in my judicial capacity, and then rehashes the same arguments the he has previously

made as evidence that I am clearly prejudiced against him. His evidence primarily includes the orders and opinions of September 12, 2005 (Pet'r's Mot. at 8-11), February 23, 2006 (Pet'r's Mot. at 12), and May 3, 2006 (Pet'r's Mot. at 14).[9] "Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994) (quoted in Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n 107 F.3d 1026, 1043 (3d Cir. 1997)). They are grounds for appeal, not recusal, id., and here petitioner has taken advantage of this option by appealing two of the three decisions.

I take particular issue with petitioner's contention that my September 12, 2005 opinion "ignored or failed to consider several key facts and procedural rules" (Pet'r's Mot. at 8) and "arbitrarily" denied his double jeopardy claims. In that 31-page opinion I cited to five cases that supported the conclusion that double jeopardy had not been violated, cases which the petitioner is free to distinguish in his appeal, on any post-appeal remand, and in his new habeas petition.[10] Furthermore, it should be noted that I ruled for petitioner in that opinion on his speedy appeal claim.

Petitioner misinterprets my encouragement to the government to offer a plea agreement to mean that I clearly believed that he was entitled to relief under speedy trial law; and then he jumps to the conclusion that my ultimate failure to grant this relief necessarily means that I am

---

[9] Petitioner also claims that I delayed giving a copy of my order denying stay of his fourth trial to him and his attorney, but not to the District Attorney's Office (Pet'r's Mot. at 14). Distribution of opinions is conducted through ECF. Any delay in receiving an order is at most a clerical error, and certainly not intentional.

[10] In his Motion to Reconsider and/or Vacate Judgment (Doc. #91), petitioner attempted to distinguish one of the cases, United States v. Avalos, 541 F.2d 1100 (5th Cir. 1976), but did not address the other four Supreme Court and Third Circuit cases.

biased against him. (Pet'r's Mot. at 8). As discussed <u>infra</u>, settlement agreements are useful even when relative legal merit is in doubt; many other considerations come into play. While I do not believe that a fourth criminal trial would violate double jeopardy or due process laws in this case, I do believe that subjecting any defendant to four trials on the same charges may very well be unjust. My involvement in the unsuccessful settlement negotiations in this case was merely an attempt to work out a modest compromise in justice. I was trying to assist petitioner by presenting him more options than he would otherwise normally have.

Petitioner may fear that I will continue to rule against him out of retaliation (Motion at p.16), but the relevant inquiry is whether a reasonable person would objectively harbor the same fear. I do not believe so. In the words of the Supreme Court:

> All of these grounds are inadequate...: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."

<u>Liteky v. U.S.</u>, 510 U.S. 540, 556 (1994) (affirming denial of two motion to recuse that were premised on a judge's rulings, admonishments of defendant and his counsel during trial, and cutting short testimony helpful to defendant). For these same reasons, petitioners motion for recusal is denied.

III.     *Participation in Settlement Negotiations*

Petitioner also asks me to revoke his May 9, 2006 guilty plea entered in state court on the grounds that my involvement in the settlement process violated Rule 11 of the Federal Rules of Criminal Procedure. Rule 11© governing plea agreement procedure states that the government and defendant may engage in settlement negotiations, but "[t]he court must not participate in these discussions." Even though this rule does not apply to habeas corpus proceedings (and even if it did prisoner was not prejudiced by my actions), I write briefly to explain my rationale for promoting settlement negotiations in this case.[11]

Habeas corpus petitions are civil actions, not criminal. While it is true that Rule 11 of the Federal Rules of Criminal Procedure bars judicial participation, Rule 16(a)(5) of the Federal Rules of Civil Procedure directs the court to call the parties before it "for such purposes as... facilitating the settlement of the case." Moreover, in § 2254 cases such as this, the risk that the sentencing judge will be prejudiced by participation in plea negotiations does not exist because the defendant is ultimately sentenced by a state court judge, who may accept or reject any plea agreement presented based on his or her own independent evaluation. See Santobello v. New York, 404 U.S. 257, 262 (1971) (noting that a defendant has "no absolute right to have a guilty plea accepted"); Nancy Jean King, Priceless Process: Nonnegotiable Features of Criminal Litigation, 47 UCLA L. REV. 113, 136 (1999) (" In all jurisdictions, the judiciary retains at least limited authority to review and reject plea agreements, negotiated dismissals, and other

---

[11] Because I was involved in the plea negotiations before the plea was presented in open court, I "participated" in the discussion. See United States v. Woods, 775 F.2d 82, 86 (3d Cir. 1985) (finding that violation of Rule 11(c) depends on what stage the judge interceded).

stipulations.").[12]

Even if this were a criminal case, there would be no justification for revoking petitioner's plea agreement because he did not plead guilty as the result of settlement negotiations in this court. He plead guilty after subsequent negotiations with the government in a separate state court proceeding. The primary concern behind the Rule 11© prohibition is to ensure that plea agreements are not involuntarily entered by defendants as a result of coercive judicial intervention. United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006).[13] In this case, there was no ultimate agreement, so there could not have been coercion, and consequently no violation. See U.S. v. Ebel, 299 F.3d 187, 192 (3d Cir. 2002) (finding harmless error when a judge participated in the plea negotiations but defendant was not coerced). See also United States v. Diaz, 138 F.3d 1359, 1363 (11th Cir. 1998) (denying relief when judge took an active part in discussing defendant's probable sentence, but defendant was not prejudiced because he plead not guilty and chose to stand trial); United States v. Bradley, 455 F.3d 453, 463 (4th Cir. 2006) (for defendant to prevail on a Rule 11© challenge, aside from proving judicial participation, he must also show "that the error affected the Defendants' substantial rights and that refusal to notice the

---

[12] Petitioner's reference to United States v. Adams, 634 F.2d 830 (5th Cir. 1981), superceded by statute, actually supports this position. Upon review of that criminal case, in which defendant also plead not guilty after the judge participated in plea negotiations, the court held that the proper relief was re-sentencing defendant with a new judge, not granting a new trial. Id. at 842. Here, petitioner automatically had a separate sentencing hearing and judge.

[13] Other rationales include: preserving the judge's impartiality during and after plea negotiations; participation could make it difficult to assess the voluntariness of a plea agreement; participation could diminish the judge's objectivity in post-trial matters such as sentencing and motions for judgment of acquittal; preventing the impression of the court being anything less than a neutral arbiter during the course of negotiations. United States v. Bradley, 455 F.3d 453, 463 (4th Cir. 2006). None of these considerations are applicable in this case.

error would seriously affect the fairness, integrity, or public reputation of judicial proceedings").[14]

I take this opportunity to note tangentially the possible value of promoting settlement negotiations in habeas corpus actions. One scholar has recently noted that habeas settlements, though extant in various jurisdictions, are still rare.[15] Anup Malani, Habeas Settlements, 92 VA. L. REV. 1 (2006). This is curious considering that plea bargains are commonly negotiated by the same lawyers in criminal cases. Id. at 18-19. Moreover, similar agreements in habeas cases would have similar benefits, such as presenting a petitioner with an option he may not otherwise have. Id. One common explanation for this dichotomy is that habeas parties simply do not think about out-of-court resolutions. Id. at 39. Judges may provide a much needed stimulus, or at least plant the settlement seed in their heads. In fact, Malani found that petitions with the same fact pattern present here – not obviously without merit, have not already come close to being granted, and petitioner has been appointed habeas counsel by a court – are particularly suitable for settlements negotiations. Id. at 33.

---

[14] Washington argues that he was prejudiced because "my participation in plea negotiations and subsequent bias toward him after he rejected the plea deal [...] directly resulted in petitioner receiving a much harsher sentence." (Motion at 19). He claims that the District Attorney's Office "rightfully" interpreted my order denying his motion to stay the state court proceedings "to mean that they were free to do what they please with petitioner." (Pet'r's Mot. at 20). I fail to see how petitioner's May 9, 2006 guilty plea had anything to do with me or any involvement I may have had in negotiations in this court. Even if there were coercion, there is still no causal connection.

[15] In a survey, Malani found that prosecutors and public defenders in 15 out of 26 federal districts had observed the use of habeas settlements, but he found no documented cases of habeas settlements between state prisoners and state defendants in federal courts. Malani at 8-9, 19. Notably, Malani found two undocumented Third Circuit habeas cases in which settlement offers were rejected by the petitioners. One petition prevailed and went on to sue the state; the other petitioner lost and is presently serving out a life sentence. Malani at 23-24.

## **ORDER**

**AND NOW**, this ___10th___ day of January, 2007, it is **ORDERED** that petitioner's motion for recusal (No. 02-7474, Doc. # 109) is **DENIED**.

*Anita B. Brody*

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

O:\ABB 2007\Washingon recusal opinion.wpd